UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MADISON B.,

                        Plaintiff,

v.                                                               1:20-CV-1323
                                                             (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

AMY C. CHAMBERS, ESQ.                    AMY CHAMBERS, ESQ.
  Counsel for Plaintiff
14 Corporate Woods Boulevard
Albany, NY 12211

LAW OFFICES OF KENNETH HILLER, PLLC      KENNETH HILLER, ESQ.
  Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                DANIELLA CALENZO, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 14.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted, to the

extent it seeks remand for further proceedings, and the Commissioner's motion is denied.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1998.  (T. 76.)  She graduated high school.  (T. 190.) Generally, Plaintiff's alleged disability consists polycystic ovary syndrome ("PCOS"), hypothyroidism, bi-polar disorder, anxiety, and depression.  (T. 189.)  Her alleged disability onset date is January 1, 2017.  (T. 76.)

   B.   **Procedural History**

On August 18, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 76.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On June 6, 2019, Plaintiff appeared before the ALJ, Bryce Baird.  (T. 32-66.)  On September 24, 2019, ALJ Baird issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-31.)  On July 20, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 17-26.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 18, 2017.  (T. 17.)  Second, the ALJ found Plaintiff had the severe impairments of: generalized anxiety disorder, mood disorder,

and obesity. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id*.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b)[1]. (T. 19.) The ALJ found Plaintiff:

> can lift, carry, push and pull 20-pounds occasionally, and 10 pounds frequently. She can sit for six hours in an eight hour day, and stand and walk six hours in an eight hour day. She is limited to frequent climbing of ramps and stairs, and no climbing ladders, ropes or scaffolds. She can frequently stoop; occasionally kneel and crouch but never crawl. She is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days; work allowing a person to be off task 5% of the workday, in addition to regularly scheduled breaks; work that does not require driving a vehicle, and work that does not require travel to unfamiliar places. She is limited to occasional interaction with co-workers; no more than superficial interaction with the public; work that does not require teamwork, such as on a production line; and work that requires doing the same tasks every day with little variation in location, hours or tasks.

(*Id*.) Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-26.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC was unsupported by substantial

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

3

evidence. (Dkt. No. 11 at 18-27.) Second, and lastly, Plaintiff argues the ALJ used improper selective reading when evaluating the credibility of Plaintiff and others. (*Id*. at 27-30.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 13.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ's evaluation of Plaintiff's mental impairments and corresponding RFC limitations were supported by substantial evidence. (Dkt. No. 12 at 5-23.) Second, and lastly, Defendant argues the ALJ properly considered Plaintiff's subjective complaints. (*Id*. at 23-27.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Medical Opinions Provided by Christopher Martin, M.D.

Plaintiff argues the ALJ failed to adequately articulate his reasoning for finding the various opinions of treating source Dr. Martin "not persuasive." (Dkt. No. 11 at 18-30.) For the reasons outlined below, remand is required because the ALJ failed to properly articulate how he considered the supportability and consistency of Dr. Martin's opinions.

Under 20 C.F.R. § 416.920c the ALJ must articulate how he or she considered certain factors in assessing medical opinions. *See* 20 C.F.R. § 416.920c(a)-(c). The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id*. § 416.920c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion, but need not expound on the remaining three. *Id*. § 416.920c(b). The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical

opinion in the record, and may apply the factors holistically to a single medical source. *Id*. § 416.920c(b)(1).

Plaintiff's treating mental health provider, Dr. Martin, completed two "Mental Impairment Questionnaire" forms and also responded to the ALJ's request for additional information. On the October 31, 2017 form, Dr. Martin listed Plaintiff's diagnosis as "social phobia, panic disorder" and listed a current Global Assessment of Functioning score ("GAF") of 60. (T. 413.) Dr. Martin noted he provided medication management for Plaintiff every two to three months for fifteen-minute sessions. (*Id*.)

Dr. Martin opined Plaintiff had "mild" limitations in her ability to: understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. (T. 416.)[2] He opined Plaintiff had "moderate" limitations in her ability to: remember work-like procedures; maintain attention for two hour segments; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; travel in unfamiliar places; and use public transportation. (*Id*.)[3] Dr. Martin opined Plaintiff had "marked" limitations in her

---

[2] The form provided the following definition of mild, "the individual is functioning in the area independently, appropriately, effectively and on a sustained basis with a slight limitation." (T. 415.)
[3] The form provided the following definition of moderate, "the individual's functioning in the area independently, appropriately, effectively on a sustained basis is fair." (T. 415.)

ability to: maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; and deal with normal work stress.  (*Id.*)[4]  When asked, on average, how often Plaintiff would miss work due to impairments or treatment, Dr. Martin checked "more than four days per month."  (T. 417.)

On February 19, 2019, Dr. Martin completed another questionnaire.  (T. 434-438.)  He again indicated he treated Plaintiff every two to three months for "medication and symptom management."  (T. 434.)  He listed clinical findings as "irritable, mood up and down, anxious, [and] stressed."  (*Id.*)  Dr. Martin opined Plaintiff could frequently ("1/3-2/3"): remember work-like procedures; understand and remember very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; and use public transportation.  (T. 437.)

Dr. Martin further opined Plaintiff could occasionally ("up to 1/3"): maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable

---

[4] The form provided the following definition of marked, "the individual's functioning in the area independently, appropriately, effectively and on a sustained bases is seriously limited."  (T. 415.)

number and length of rest periods; respond appropriately to changes in a routine work settings; deal with normal work stress; set realistic goals or make plans independently of others; interact appropriately with the general public; and maintain socially appropriate behavior. (*Id*.) When asked, on average, how often Plaintiff would miss work due to impairments or treatment, Dr. Martin checked "more than four days per month." (T. 437.)

In a letter dated June 7, 2019, the ALJ contacted Dr. Martin seeking clarification of his opinion that Plaintiff would likely be absent four days of work per month. (T. 243.) Dr. Martin responded on June 26, 2019. (T. 442.) Dr. Martin stated his opinion was "based on a general clinical impression as is typical in [his] field." (*Id*.) He further explained that he had no formal training in terms of determining work duty and he did not consult with Plaintiff in completing the questionnaires. (*Id*.) Dr. Martin stated his opinion was based on "subjective statements and complaints as is typical in the field of psychiatry" and there was "no laboratory workup that would have influenced [his] recommendations." (*Id*.)

After thoroughly outlining Dr. Martin's opinions and 2019 letter, the ALJ determined the opined limitations were "not persuasive, as they are inconsistent with the evidence of record." (T. 24.)[5] The ALJ noted he requested clarification regarding the doctor's opined limitations and Dr. Martin stated his opinions were based on subjective statements and complaints as typical in his field. (*Id*.) The ALJ further stated

---

[5] In his written decision, the ALJ refers to "Dr. Miller" when discussing the persuasiveness of Dr. Martin's opinions. (T. 24.) However, the ALJ clearly cites medical opinion evidence provided by Dr. Martin and therefore this is a typographical error. (*Id*.)

9

Dr. Martin's opined assertions regarding absenteeism was based on a general clinical impression.  (*Id.*)

Under 20 C.F.R. § 416.920c the ALJ "must articulate" how he considered supportability and consistency.  The "articulation requirements in these final rules will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review [the Commissioner's] final decision."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01.  Therefore, a conclusory finding that an opinion is inconsistent with the record, without more, is improper.

Here, remand is required because the ALJ failed to articulate how he considered the supportability and consistency of Dr. Martin's opinions.  *See* 20 C.F.R. § 416.920c. The ALJ's conclusory statement, that Dr. Martin's opined limitations were "inconsistent with the evidence of record," without more, warrants remand.  *Jaleesa H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01180, ---F.Supp.3d---, 2022 WL 174337, at *6 (W.D.N.Y. Jan. 18, 2022) ("the ALJ did not *explain* anything - instead, he made a conclusory statement that Dr. Fabiano's opinion was "generally consistent and supportive," without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations"); *see Melissa S. v. Comm'r Soc. Sec.*, No. 5:21-CV-420, 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("the ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true").

Further, the ALJ's reasoning for discounting Dr. Martin's opinions cannot be gleaned from his written decision. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"); *see Salmini v. Comm'r Soc. Sec.,* 371 F. App'x. 109 (2d Cir March 25, 2010) (same). Although the ALJ thoroughly outlined the objective and opinion evidence in the record, the ALJ's decision fails to clarify what evidence he found inconsistent with Dr. Martin's functional limitations or opinion regarding Plaintiff's absenteeism. Therefore, remand is required for a proper evaluation of Dr. Martin's opinions and subsequent findings.

Next, Plaintiff argues the ALJ failed to properly assess her subjective complaints. (Dkt. No. 11 at 27-30.) Due to the errors identified and the impact they may have on the ALJ's determination regarding Plaintiff's subjective complaints, the ALJ should reassess Plaintiff's complaints on remand.

For these reasons, remand is required for further consideration of Dr. Martin's medical opinions and subsequent findings.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:       April 25, 2022

_____
William B. Mitchell Carter
U.S. Magistrate Judge